D. J. Cagan, for the Defendant.

No. 413167

## MAY BELLE JACQUOT, ET AL
### v.
## WILLIAM FILENE'S SONS COMPANY

(May 3 — August 13, 1957)

*Present*: ADLOW, C. J., RILEY AND ROBERTS, JJ.

*Adlow, C. J.* Action of contract to recover for

injuries caused by an artificial fingernail restorer pur-
chased by the plaintiff from the defendant on the
recommendation of the defendant's salesgirl.

The plaintiff, May Belle Jacquot, was at the time
of the purchase of the restorer, employed by the
Hazel Bishop Company as a cosmetics demonstrator,
and assigned to the Filene's store in Boston. In April,
1955, and while promoting her product at the Filene
store, she purchased, on the recommendation of a
salesgirl, an artificial fingernail kit consisting of vari-
ous chemicals and powders which when used in
accordance with printed instructions would restore
and lengthen fingernails. The purchase was made in
April, 1955. The plaintiff used the products in the
kit from April until the end of July when her fingers
and fingernails became broken and inflamed. She went
to the clinic maintained by the defendant at its store
where she was treated by the physician in charge.
Later she was treated by a dermatologist, Dr. Hill-
mann. Her condition did not clear up until about
the middle of November, 1955.

The plaintiff was allergic to mascara and perfume
and when she used them she had transitory skin
eruptions. According to the testimony of Dr. Hill-
mann, who treated the plaintiff, the condition of
the plaintiff's hands was caused by the artificial
fingernail restorer. He further testified that he had
received from the plaintiff a previous history of an
allergy to mascara and perfume. In his opinion the
plaintiff was allergic to the liquid in the artificial
fingernail kit. The patch test conducted by the doctor
showed a positive reaction to the liquid in one of
the vials, and also to the same liquid when mixed
with the powder. According to Dr. Hillmann this
was an unusual case. It was the first case he had
ever seen of a person having dermatitis from the use
of the Arty Nail Kit.

The defendant, during the year 1955, sold over
500 of these kits, and this was the only complaint

that was made as a result of their use. Prior to the purchase of this kit the plaintiff had gone to the defendant's clinic for treatment for an itchy and inflamed eye following the use of mascara. On the occasion of this visit to the clinic she informed the defendant's doctor that she was allergic to fingernail polish.

At some time, after the plaintiff became aware of her condition, she arranged for her husband and a female acquaintance to make patch tests with respect to the chemicals in the kit. Each performed the test by applying the chemicals from three of the bottles to various parts of the thigh and covering the spots with adhesive tape. Over the objection and subject to a claim of report of the defendant, both were permitted to testify. They did testify that after leaving the chemicals on the spots to which they had been applied for periods of from 24 to 48 hours, they removed the adhesive tape. The female witness testified that two of the three spots, when uncovered, appeared red and inflamed, the other not. The plaintiff's husband testified that when he removed the tape the spot to which chemical was applied appeared red and inflamed; the spot to which he applied the powder did not so appear.

We must disregard the patch tests made by the plaintiff's husband and by her lady friend. In the first place, they were not made under the supervision or direction of any qualified dermatologist or expert. What makes the evidence particularly objectionable is the fact that the application of the material in issue to the bare skin on the thigh is hardly a place to test the suitability of a product sold as a nail restorer. It is unnecessary to decide at this time whether a test of this product under professional supervision and direction would have been proper if the product had been applied to the fingernails in the manner specified in the printed instructions in the kit: it might have a tendency to expose dangers inherent

in the product. But the obvious difference in texture of the skin and the fingernail should not be ignored. These tests permitted no rational deductions which could be helpful in determining the eventual issue raised by these pleadings. *The evidence should have been excluded.*

When the internist in charge of the defendant's clinic testified, his direct testimony was limited to the occasion prior to the purchase of the kit, the visit of the plaintiff to the clinic because of an inflamed eye. The internist was not a dermatologist. Despite this, counsel for the plaintiff in cross-examination and over the objection of the defendant, asked the witness the following question:

"If there is a chemical that is injurious and it is applied, and if it is applied to the finger and sealed in, would that be sufficient cause to produce damage to the fingers?" Over the objection of the defendant the witness answered, "It would be reasonable to expect that." *The admission of this evidence was clearly wrong.* In the first place the witness was not a dermatologist or expert. As an internist his observations or opinions had no professionally valid status. What makes the question particularly objectionable is the fact that it is framed in a way that permits only one answer, and that favorable to the plaintiff. If a chemical "is injurious" it is most natural that it will cause damage. It is injurious for the very reason that it causes damage.

In the cause in issue there was no evidence that the chemicals contained in the kit contained any harmful or injurious substances. The only evidence we have here indicates a female plaintiff with an allergy to perfume, mascara, and fingernail polish, whose doctor's opinion is that her inflamed hands and broken nails were caused by the artificial fingernail restorer because she had an allergy to a certain chemical in the restorer. No chemical analysis was made of the chemicals which made up this kit.

■ The judge's finding can only be sustained on the theory pronounced in *Bianchi v. Denholm and McKay Co.*, 302 Mass. 469. Where the court ruled that recovery may be had for breach of the implied warranty that the product was fit to be used *if the harm it causes is not only peculiar to the individual whose claim is in issue, but to a class of persons similarly susceptible*. When the class of persons, of whom the plaintiff is one, are "allergic" and not "average", then the ingredients constitute a substance sufficiently harmful to constitute a breach. *Bianchi v. McKay and Denholm Co.*, 302 Mass. 469, 472. Such a tendency would constitute a breach of the implied warranty of fitness for the purpose for which it was purchased. G. L. c. 106, §17 (1). But there is no such evidence. In the cause in issue the plaintiff and her doctor both supported the defendant's contention that she had an allergy to the ingredients in the fingernail restorer. But there is no evidence whatever of a class similarly susceptible. Nor is there any evidence of the chemical content of the defendant's product, or that it is of itself deleterious, injurious, or dangerous. In the absence of a class peculiarly susceptible to this product, it is essential, if the plaintiff is to succeed, that she prove that *it* contains ingredients that are poisonous, noxious and irritating with respect to normal people. *Payne v. R. H. White Co.*, 314 Mass. 63; *Graham v. Jordan Marsh Co.*, 319 Mass. 690; *Longo v. The Touraine Stores Co.*, 319 Mass. 727.

There is little to distinguish this case from that decided by this court in *Khouri v. William Filene's Sons Co., Inc.*, 7 Legalite 19.

*Finding for the plaintiff vacated.*
*Finding to be entered for defendant.*

Nathan Fink, Richard D. Gilman, for the Plaintiff.
James D. Casey for the Defendant.